UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEBORAH A. HOHMAN,

    Plaintiff,

    v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

No. 2:13-cv-1698-CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born August 29, 1962, applied on November 2, 2009 for DIB and on February 5, 2010 for SSI, alleging disability beginning September 4, 2009. Administrative Transcript ("AT") 133, 137. Plaintiff alleged she was unable to work due to depression, bipolar disorder, mood disorder, sleep apnea, diabetes, and high blood pressure. AT 151. In a decision dated April 5,

/////

1

2012, the ALJ determined that plaintiff was not disabled.[1]  AT 29.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since September 4, 2009, alleged onset date.
>
> 3. The claimant has the following severe impairments: diabetes mellitus, neuropathy, [and] obesity.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

---

[1]   Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work . . . except she is to avoid climbing and is limited to occasional balancing, crouching, crawling, kneeling, and stooping. She is to avoid exposure to workplace hazards such as unprotected heights and dangerous moving machinery.
>
> 6. The claimant is capable of performing past relevant work as a claims examiner, telephone solicitor, and claims clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from September 4, 2009, through the date of this decision.

AT 23-29.

ISSUES PRESENTED

Plaintiff argues that the ALJ improperly evaluated the medical evidence and improperly discredited her.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see

1   also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the
2   administrative findings, or if there is conflicting evidence supporting a finding of either disability
3   or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,
4   1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in
5   weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).
6   ANALYSIS
7         A.   Medical Evidence
8             1.   Step-Two Severity Analysis
9         Plaintiff contends the ALJ failed to consider plaintiff's heart problems in assessing the
10  severity of her impairments.  An impairment is "not severe" only if it "would have no more than a
11  minimal effect on an individual's ability to work, even if the individual's age, education, or work
12  experience were specifically considered."  SSR 85-28.  The purpose of step two is to identify
13  claimants whose medical impairment is so slight that it is unlikely they would be disabled even if
14  age, education, and experience were taken into account.  Yuckert, 482 U.S. at 137.  "The step-two
15  inquiry is a de minimis screening device to dispose of groundless claims."  Smolen v. Chater, 80
16  F.3d 1273, 1290 (9th Cir. 1996); see also Edlund, 253 F.3d at 1158.  Impairments must be
17  considered in combination in assessing severity.  20 C.F.R. § 404.1523.  At step two, the burden
18  is on plaintiff to demonstrate severity.  See Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).
19        In determining whether plaintiff had a severe impairment or a severe combination of
20  impairments, the ALJ did not specifically assess plaintiff's impairments related to her heart
21  problems.  Plaintiff argues that this error at step two necessarily makes the ALJ's findings in steps
22  three, four and five erroneous as well.  However, the ALJ's failure to assess the severity of
23  plaintiff's heart condition at step two was harmless because the ALJ found that plaintiff had
24  severe impairments of diabetes mellitus, neuropathy, and obesity and considered the limitations
25  associated with plaintiff's heart condition at the other steps of the sequential process.  AT 23; see
26  also Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's failure to discuss claimant's
27  impairment at step two was harmless when ALJ considered limitations associated with that
28  impairment at step four).  At step three, the ALJ considered plaintiff's obesity "using the criteria

of the musculoskeletal, respiratory and cardiovascular impairments . . . ." AT 25.  In determining plaintiff's RFC, the ALJ considered plaintiff's history of heart problems noting that recent records showed plaintiff's heart condition was clinically stable.  AT 26; 782 (Dr. Smith noting plaintiff was "clinically stable").  Accordingly, the ALJ's omission of any severity finding regarding plaintiff's heart condition was harmless error because the ALJ found that plaintiff had severe impairments and considered plaintiff's heart condition at subsequent steps.

          2.  Medical Opinions

Plaintiff contends the ALJ improperly rejected the opinions of Dr. David Smith and Dr. Anthony Edwards.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen, 80 F.3d at 1285.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence.  Id. at 830.  "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Magallanes v. Bowen, 881 F.2d 747, 751 (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)).  "The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors[], are correct."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (*e.g.*, supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751).

/////

The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

### a. Dr. David Smith

Dr. Smith, plaintiff's treating cardiologist, provided a Cardiac Residual Functional Capacity Questionnaire dated January 25, 2012. AT 830. Dr. Smith reported that he had seen plaintiff on five separate occasions from July 2010 to January 2012. AT 827. He diagnosed plaintiff with ventricular tachycardia and noted that plaintiff had a defibrillator placement. AT 827. Dr. Smith further reported that plaintiff experienced fatigue, had no anginal pain, and would have good and bad days. AT 827, 830. Dr. Smith opined that plaintiff was limited to sitting for two hours in an eight-hour day and standing and/or walking for less than two hours in an eight-hour day. AT 829. According to Dr. Smith, plaintiff could lift and carry less than 10 pounds frequently, 10 pounds occasionally, and 20 pounds rarely, required a job that allows her to switch from sitting, standing and walking, and may, at times, need to take unscheduled breaks during an eight-hour work day. AT 829-30. Dr. Smith also reported that plaintiff had limitations arising from diabetic neuropathy, left ankle edema, and was unsteady on her feet. AT 830. The ALJ gave Dr. Smith's opinion little weight. AT 27.

On the other hand, the ALJ gave great weight to the opinion of Dr. George Nickles, a State agency medical consultant. AT 27. Dr. Nickles opined that plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for at least two hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday. AT 733.

The ALJ concluded that Dr. Smith's findings were not supported by the medical evidence. AT 27. Specifically, the ALJ noted that records show plaintiff's diabetes has been well-controlled since the onset of her disability (AT 348 [diabetes is stable]), few significant treatment notes show complaints of neuropathic pain and edema in the lower extremities (AT 998-1003), and plaintiff's heart problems stabilized within six months after her defibrillator implantation (AT 782 [Dr. Smith noting plaintiff was "clinically stable"]). AT 27. The ALJ also noted that, "[a]s of January 2012, plaintiff did not have significant symptoms of fatigue." AT 27. In support
/////

1    of this finding, the ALJ cited Dr. Smith's progress notes from a January 17, 2012 visit with
2    plaintiff wherein there was no mention of fatigue.  AT 27, 782-83.

3          Plaintiff contends the ALJ's reasons are insufficient to reject Dr. Smith's opinion.
4    According to plaintiff, the medical records relating to her heart condition were generated by Dr.
5    Smith and, thus, Dr. Smith's opinion is consistent with the medical record (*i.e.*, his own treatment
6    notes).  However, the record, as a whole—including Dr. Smith's progress notes, indicate that
7    plaintiff's heart condition stabilized.  (AT 782).  Plaintiff further contends that, since Dr. Smith
8    did not treat plaintiff's diabetes, the ALJ's findings centered around the symptoms of diabetes
9    were insufficient to reject Dr. Smith's findings.  This is a mischaracterization of the ALJ's
10   opinion.  Plaintiff also contends that the fact she does not have angina is not a valid reason for
11   rejecting his opinion because plaintiff's heart condition involves arrhythmia.  However, the ALJ
12   did not use Dr. Smith's finding regarding plaintiff's lack of angina as a reason for rejecting the
13   opinion.  AT 26-27.  Finally, plaintiff asserts that she reported experiencing fatigue in September
14   2011.  That plaintiff reported experiencing fatigue in September 2011 does not undermine the
15   ALJ's reasoning that plaintiff's symptoms of fatigue were short-lived, and, in January 2012, she
16   did not report experiencing fatigue to Dr. Smith.  AT 27, 782-83, 786.  The ALJ's reason for
17   discounting Dr. Smith's opinion as lacking evidentiary support is specific and legitimate and
18   supported by the record.  The ALJ did not err in rejecting the opinion of Dr. Smith.

19         b.   Dr. Anthony Edwards

20         In April 2010, Dr. Anthony Edwards performed a psychological evaluation of plaintiff.
21   AT 670.  Dr. Edwards observed that plaintiff wept the entire session from arrival, through the
22   assessment, and after.  AT 670.  Dr. Edwards noted plaintiff was trembling, which plaintiff
23   attributed to being upset because she had moved to Nevada to be with her boyfriend and recently
24   received a message from him saying that he was going back to his wife.  AT 672.  Plaintiff
25   admitted suicidal and homicidal ideation, stating that she did not try to kill herself, instead she
26   would hit herself.  AT 672.  As to plaintiff's cognitive functions, Dr. Edwards noted that plaintiff
27   was oriented to person, place, time and purpose, had very poor ability to perform abstract
28   reasoning, and demonstrated poor judgment, but her short-term and delayed memories were very

good.  AT 672.  Dr. Edwards opined that plaintiff had low average to average range of cognitive abilities.  AT 673.  She could define simple and moderately complex words, her abstract reasoning was poor, her short-term and delayed memories were very good, her bank of general knowledge was poor, judgment was poor, and she could perform detailed and simple 1- or 2-step instructions.  AT 673-74.  Dr. Edwards further opined that appropriate interaction with supervisors, coworker, and the general public was not possible for plaintiff at the time of the examination because plaintiff's mood was variable, she wept throughout the examination, and hit herself.  AT 674.  Dr. Edwards also opined that plaintiff did not have the ability to maintain concentration and attention sufficient to carry out specific tasks based on plaintiff's inability to: discriminate between simple shapes and figure sizes, draw complex and abstract shapes, complete a multiple-step task involving drawing parallel lines across the page, and spell the word "triangle" correctly.  AT 674.  His prognosis for plaintiff was very poor.  AT 675.

The ALJ gave little weight to the opinion of Dr. Edwards because it was inconsistent with plaintiff's testimony and the medical record.  AT 27.  The ALJ discounted the opinion as to plaintiff's limitations in social functioning and concentration, persistence and pace because, at the time of examination, plaintiff was working, could drive herself to work, spent evenings talking to others on the phone or in a Yahoo chat room, and could perform most daily living activities independently.  AT 27, 673.  The ALJ also noted that Dr. Edwards concluded plaintiff's problems appeared to be connected with her boyfriend.  The ALJ also discussed plaintiff's treatment records from 2009 to 2010 demonstrating that plaintiff's mental symptoms were related to her being laid off from her previous job and unemployed (AT 356, 358), and, after her heart attack, she complained of anxiety and depression because she feared she would die due to her heart problems (AT 834).  AT 27.  The ALJ also noted that from August to December 2011, plaintiff was alert, oriented, cooperative, and had no deficits in memory, judgment, insight, impulse control, or intellectual function, and reported good energy.  AT 27, 831-840, 993-1007.

Plaintiff contends that her daily activities are insufficient to provide a basis for rejecting the opinion of Dr. Edwards, noting that "[t]he Social Security Act does not require claimants to be utterly incapacitated to be eligible for benefits." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.

1989). As discussed above, the ALJ's reasons for rejecting the opinion of Dr. Edwards were not limited to plaintiff's daily activities but rather focused on several inconsistencies between plaintiff's medical records and the opinion of Dr. Edwards. The ALJ did not err in rejecting the opinion of Dr. Edwards.

### B. Plaintiff's Credibility

Plaintiff further contends that the ALJ failed to provide sufficient reasons for discrediting her subjective complaints. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen, 80 F.3d at 1284; see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third-party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff reported that she was unable to work due to a combination of impairments including depression, bipolar disorder, mood disorder, sleep apnea, diabetes, and high blood pressure. AT 151. At the hearing before the ALJ, she testified that she could not be employed because of her heart problems. AT 58. The ALJ found plaintiff's statements concerning the intensity, persistence and limiting effects of plaintiff's symptoms not credible based on plaintiff's treatment history. AT 26. The ALJ noted that plaintiff's treatment history was sporadic and that she had a record of improvement after her heart attack in July 2011. AT 26. As explained above, the record indicates that plaintiff's diabetes has been well-controlled (AT 348), she has had few complaints of neuropathic pain and edema (AT 998-1003), and, as of January 2012, her heart problems had stabilized (AT 782). Significantly, the ALJ noted that plaintiff had not sought medical attention for any of her symptoms from the middle of 2010 to the middle of 2011, concluding that "[t]his year and half-long gap in treatment-seeking history during the claimant's alleged period of disability tends to undermine her overall credibility regarding the severity of symptoms." AT 26. The facts considered by the ALJ in discrediting plaintiff are valid and supported by the record. The credibility finding will not be disturbed.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is granted; and

3. Judgment is entered for the Commissioner

Dated: October 29, 2014

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

104 hohman2.ss